**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DREAM PALACE, et al., ) | No. CV-97-2357-PHX-SMM |
| ) | |
| Plaintiffs, ) | **MEMORANDUM OF DECISION AND ORDER** |
| ) | |
| v. ) | |
| ) | |
| MARICOPA COUNTY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Pending before the Court are a Motion for an Award of Attorney Fees Under 42 U.S.C. § 1988 [Doc. No. 205] and a First Supplemental Fees Application [Doc. No. 225] filed by Plaintiffs Dream Palace, et al. Also pending before the Court are two motions for permission to exceed the page limitation of Local Rule 7.2(e): a Motion to Exceed Page Limit filed by Defendant Maricopa County [Doc. No. 215] and a Request for Leave to File a Reply Memorandum in Excess of Page Limitation of Rule 7.2(e) filed by Plaintiffs [Doc. No. 223].[1]

Having considered all briefs, supplemental authorities and materials submitted by the parties, the Court now makes the following ruling:

**BACKGROUND**

Dream Palace is a non-alcoholic, erotic dancing establishment featuring non-obscene, sexually oriented dances performed on stage, at table side, and in semi-private booths.

---

[1] For good cause appearing the Court will grant both motions to exceed the page limitation of Local Rule 7.2(e) [Doc. Nos. 215 & 223].

Plaintiffs are Dream Palace, and several of its individual dancers and managers. On April 23, 1997, in reliance on A.R.S. § 11-821(B), Maricopa County ("Defendant") enacted its original version of Ordinance P-10, a framework for sexually oriented businesses in Maricopa County. The ordinance contains licensing requirements as well as time, place, and manner regulations. On or about November 23, 1997, Plaintiffs filed their original complaint alleging that the County lacked authority under A.R.S. § 11-821 to enact Ordinance P-10. Further, the complaint alleged that the license and permit requirements were facially invalid as a prior restraint on protected speech. Alerted to the potential problems, the Arizona Legislature drafted and passed Senate Bill 1162, which amended A.R.S. § 11-821(B) to clarify that counties have the authority to license and regulate new or existing sexually-oriented businesses, including authority to impose permit requirements on dancers and managers. Senate Bill 1162 also created A.R.S. § 11-821.02, which further clarified that the counties have authority to regulate the existing businesses. The Bill also added § 13-1422, which imposed statewide hours of operation on all sexually oriented businesses which are not licensed to serve alcohol. On June 1, 1998, the Governor signed the bill into law and it took effect on or about August 21, 1998.

On June 17, 1998, Defendant once again amended Ordinance P-10, addressing a number of the constitutional challenges presented in Plaintiffs' original complaint. In the wake of the adopted amendments, Plaintiffs filed an amended complaint, again challenging several provisions in the ordinance on First Amendment and state law grounds. Plaintiffs simultaneously filed eight motions for partial summary judgment and Defendant filed a single cross-motion for summary judgment on all issues. On September 30, 1999, this Court granted summary judgment in favor of Defendant on all issues except two. First, with regard to the provision of Ordinance P-10 requiring an adult entertainment business to obtain a license to operate, the Court granted summary judgment in favor of Plaintiffs, holding that the procedural safeguards in place were insufficient with respect to pre-existing businesses because there was no guarantee that a pre-existing business like Dream Palace could continue to operate pending the outcome of an appeals process. Second, with regard to the provision of Ordinance P-10 requiring dancers to wear identification cards, this Court granted summary judgment in favor

of Plaintiffs, holding that the requirement that nude and semi-nude dancers wear identification cards was invalid. Instead of requiring the dancers to wear a work identification card while on the premises, the Court found that the purpose of the ordinance could be achieved by requiring the dancers to maintain the identification card on the premises.

Plaintiffs subsequently appealed this decision to the Ninth Circuit, once again challenging several of the provisions in the ordinance on constitutional grounds. On September 27, 2004, the Ninth Circuit held that the "vast majority of the provisions in the ordinance" withstood constitutional scrutiny. Dream Palace v. County of Maricopa, 384 F.3d 990, 1022 (9th Cir. 2004). However, the Ninth Circuit found in favor of Plaintiffs on two issues. First, with regard to the provision of Ordinance P-10 stating that the information supplied by manager and employee work permit applicants shall be maintained in confidence subject only to the public record laws of Arizona, the Ninth Circuit held that while the required disclosures were valid, Plaintiffs were entitled to injunctive relief to prevent the county from disclosing to members of the public information supplied by work permit applicants. Second, with regard to the provision of Ordinance P-10 banning "specific sexual activity," the Ninth Circuit held that the provision amounted to an "unconstitutional burden on the enjoyment of protected expression." Dream Palace, 384 F.3d at 1021. In rendering this decision, the Ninth Circuit stated that the county could rectify the unconstitutional language of the provision with a well-crafted ordinance. Id. The county has since re-drafted the definition of "specific sexual activity" to conform with constitutional norms regarding expressive activity protected under the First Amendment.

After the Ninth Circuit rendered its decision, Plaintiffs filed the pending Motion for Attorneys' Fees, claiming that they are entitled to $388, 842.63 for the fees and recoverable non-taxable costs incurred in litigating these claims. (Doc. No. 205). Defendants responded by arguing that Plaintiffs' request for attorneys' fees is groundless because they were the overwhelming losers in the actions before both this Court and Ninth Circuit Court of Appeals. (Doc. No. 216) In the alternative, Defendant argues that even if Plaintiffs were entitled to receive fees for prevailing on four minor issues, they are only entitled to a total fee award of

1  $1,871.40. (Doc. No. 216).  In addition to a Reply contesting Defendant's arguments (Doc. No.
2  222) , Plaintiffs filed a First Supplemental Fees Application requesting additional fees for costs
3  incurred preparing the original fees application as well as the costs incurred preparing the Reply
4  to Defendant's Response and  attempting to settle the fee dispute non-judicially (Doc. No. 226).

## STANDARD OF REVIEW

Under 42 U.S.C. § 1988, a court has discretion to award reasonable attorney's fees to "the prevailing party" in a civil rights case brought under 42 U.S.C. section 1983.  "Congress intended to permit the...award of counsel fees only when a party has prevailed on the merits." Hanrahan v. Hampton, 446 U.S. 754, 758, (1980) (*per curiam*).  A party "prevails" when the resolution of a claim "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).  A party need not prevail on every issue in order to obtain attorney's fees; rather, fees are available so long as a party prevails on an important matter, even when the party ultimately does not prevail on all issues. Texas State Teachers Assn. v. Garland Independent School Dist., 489 U.S. 782, 790 (1989). Typically, fees are determined by calculating a lodestar amount, which is arrived at by multiplying the number of hours reasonably spent on achieving the obtained results by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 433 (1983). From the initial fee calculation, the district court should exclude hours that were not "reasonably expended," including hours that are "excessive redundant or otherwise unnecessary." Hensley, 461 U.S. at 434. (citation omitted).  The district court, in its discretion, "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Hensley, 461 U.S. at 436-437.  "The most critical factor is the degree of success obtained." Hensley, 461 U.S. at 434.

When a plaintiff is only partially successful, the court will engage in a two-step inquiry to determine the appropriate reduction in the lodestar. Hensley, 461 U.S. at 434.  First, the court will identify unsuccessful claims that are wholly unrelated to the successful claims and then exclude the hours spent on unsuccessful claims. See Hensley 461 U.S. at 434-435.  Second, if

- 4 -

the unsuccessful and successful claims are related, then the court must evaluate the significance of the overall relief obtained by plaintiff in relation to the hours reasonably expended on the litigation.  If plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited" success was obtained, full compensation may be excessive. See Hensley 461 U.S. at 435-436.

## DISCUSSION

**A. Prevailing Party**

Plaintiffs challenged Ordinance P-10 on numerous grounds, failing on the majority of these claims.  However, the Court finds that Plaintiffs prevailed on four issues.  The issues on which Plaintiffs prevailed are listed below:

(1) In regard to the provision of Ordinance P-10 requiring an adult entertainment business to obtain a license to operate, this Court granted summary judgment in favor of Defendants, holding that the procedural safeguards in place were insufficient with respect to pre-existing businesses because there was no guarantee that a pre-existing business like Dream Palace could continue to operate pending the outcome of an appeals process.

(2) With regard to the provision of Ordinance P-10 requiring dancers to wear identification cards, this Court granted summary judgment in favor of Defendants, holding that the requirement that nude and semi-nude dancers wear identification cards was invalid.

(3) With regard to the provision of Ordinance P-10 stating that the information supplied by manager and employee work permit applicants shall be maintained in confidence subject only to the public record laws of Arizona, the Ninth Circuit held that while the required disclosures were valid, Plaintiffs were entitled to injunctive relief to prevent the county from disclosing to members of the public information supplied by work permit applicants.

(4) With regard to the provision of Ordinance P-10 banning "specific sexual activity," the Ninth Circuit held that the provision amounted to an "unconstitutional burden on the enjoyment of protected expression." Dream Palace, 384 F.3d at 1021.

**B. Fee Award**

1  In order to determine the reasonable attorney's fee award, the Court must first
2 determine a lodestar amount by multiplying the number of hours reasonably expended on the
3 litigation by a reasonable hourly rate.  As a preliminary matter, the Court will explain why it
4 rejects the entire amount requested in Plaintiffs' First Supplemental Fees Application.  The
5 Court will then determine the lodestar using the appropriate legal standards.

i. Plaintiffs' First Supplemental Fees Application

7  Plaintiffs have filed two separate requests for fees.  The initial request for
8 $388,842.63 was filed on September 21, 2005.  In addition, Plaintiffs requested an additional
9 $33,873 in a "First Supplemental Fees Application," which was filed on August 22, 2006.
10 As a preliminary matter, the Court will deny the entire amount requested in the  First
11 Supplemental Fees Application.  Plaintiffs had ample time to calculate the fees incurred
12 preparing the original fees application before filing the original request for fees on
13 September 21, 2005.  Moreover, any additional requests for fees and costs associated with
14 the time spent preparing the reply memorandum and related papers as well as time spent
15 attempting to resolve the fees application non-judicially should have appeared in Plaintiffs'
16 Reply in Support of Motion for Attorneys' Fees and Costs, which was filed on August 17,
17 2006.  Finally, in the Order issued on July 16, 2006, granting the parties' Stipulation
18 Requesting Extension of Due Date for Reply Papers, the Court clearly stated that no further
19 extensions would be granted.  The Court was exceedingly generous in granting numerous
20 extensions regarding the fees application.  Thus, in addition to the other stated reasons, the
21 supplemental application is untimely.  The Court now turns to the merits of the original fees
22 application.

ii. Reasonable Hourly Rates

24  In determining a reasonable fee award, the court considers both the "experience, skill
25 and reputation of the attorney requesting fees" Trevino v. Gates, 99 F. 3d 911, 924 (9th Cir.
26 1996), as well as the "prevailing market rates in the relevant community." Blum v. Stenson,
27 465 U.S. 886, 895 (1984).  A community's prevailing market rate for legal services is
28 "indicative of a reasonable hourly rate." Jordan v. Multonomah County, 815 F.2d 1258,

1262-63 (9th Cir. 1987). "[T]he relevant community, is one in which the district court sits." Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir.1991), *overruled on other grounds,* Davis v. City and County of San Francisco, 976 F.2d 1536 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993).

The Court finds that the hourly rates used by Plaintiffs in their fees application was unreasonably high. Plaintiffs used an hourly billing rate of $490 for the services of Mr. Weston and a rate of $365 for Mr. Garrou. The Court finds that the appropriate hourly rate for an attorney with Mr. Weston's skill and experience is $350 per hour and that the appropriate hourly rate for an attorney with Mr. Garrou's skill and experience is $275 per hour. The Court determined these rates using the information supplied by Plaintiffs' Declaration of Moving Counsel in Support of Plaintiffs' Motion for Attorneys' Fees (Doc. No. 207). In particular, the Court considered the rates charged by attorneys for Quarles & Brady Streich Lang, LLP in a recent bankruptcy action (Doc. No. 207 at Exhibit A), the relative experience and skill of Mr. Weston and Mr. Garrou as described in the declaration of moving counsel (Doc. No. 207 at 2-3), the original hourly rates charged by Mr. Weston and Garrou at the commencement of this action (Doc. No. 207 at 21) and the ratio of the hourly rates charged by Mr. Weston against those charged by Mr. Garrou. In addition, the Court finds that the appropriate rates for the work performed by the other attorneys associated in this litigation are $110 per hour based on their legal backgrounds and the amounts they were originally billing when this action commenced.[2] The Court finds that the relative experience of these other attorneys as well as their reported hourly rates at the time of the original billing support a rate below that which is requested by Plaintiffs (Doc No.

---

[2] The Court determined that the appropriate billing rate for Jerome Mooney was $275 per hour given his relative experience and the rate he charged at the commencement of this action. However, the Court excluded all of the hours billed by Mr. Mooney in the ultimate lodestar calculation so this rate was not factored into the $110 per hour rate assessed for the work of all the "other attorneys," which refers to the attorneys other than Mr. Weston and Mr. Garrou who worked on the prevailing claims in this matter.

- 7 -

1  207 at 2-5 and 21-22).  The Court also notes that while these hourly rates fall below the rates
2  requested by Plaintiffs, they exceed the rates suggested by Defendant.

3  <u>iii. Reasonable Hours Expended on Litigation</u>

4  Having determined the reasonable hourly rates for all of the attorneys involved in this
5  litigation, the Court must next determine the hours reasonably expended.  Because Plaintiffs
6  provided detailed records of the fees charged and hours expended in this extensive litigation,
7  the Court will exclude the hours spent on unsuccessful claims.  In addition, the Court will
8  exclude the "common time" because these hours are unreasonable given the limited degree
9  of overall relief awarded to Plaintiffs.

10  The Court finds that Plaintiffs achieved very limited degree of success in this
11  litigation.  For example, this Court held that the procedural safeguards of the ordinance were
12  insufficient with respect to pre-existing businesses like Dream Palace because there was no
13  guarantee that  a pre-existing business could continue to operate pending the outcome of an
14  appeals process.  However, this relative victory must be analyzed in light of the Court of
15  Appeals ultimate determination that "Ordinance P-10 provides the opportunity for both
16  access to judicial review and a prompt judicial decision, as the First Amendment requires."
17  <u>Dream Palace</u>, 384 F.3d 990, 1008 (9th Cir. 2004).  Accordingly, the overall relief obtained
18  by Plaintiffs regarding the adequacy of procedural safeguards provided by Ordinance P-10
19  was relatively minor.  Next, while this Court held that the requirement that nude and semi-
20  nude dancers wear identification cards was invalid, the Court found that the purpose of the
21  Ordinance could be achieved by requiring the dancers to maintain the identification card on
22  the premises.  Again, this success was rather limited in light of the overall relief sought.

23  In addition, while Plaintiffs achieved some degree of success in their appeal to the
24  Ninth Circuit, this success was limited.  For example, with regard to the provision of
25  Ordinance P-10 stating that the information supplied by manager and employee work permit
26  applicants shall be maintained in confidence subject only to the public record laws of
27  Arizona, the Ninth Circuit held that while the required disclosures were valid, Plaintiffs
28  were entitled to injunctive relief to prevent the county from disclosing to members of the

1  public information supplied by work permit applicants.  In addition, with regard to the
2  provision of Ordinance P-10 banning "specific sexual activity," the Ninth Circuit held that
3  the provision amounted to an "unconstitutional burden on the enjoyment of protected
4  expression." <u>Dream Palace</u>, 384 F.3d at 1021.  In rendering this decision, the Ninth Circuit
5  stated that the county could rectify the unconstitutional language of the provision with a
6  well-crafted ordinance. <u>Id.</u>  The county has in fact re-drafted the definition of "specific
7  sexual activity" and adopted narrowly tailored restrictions on the types of expressive
8  activities erotic dancers may perform.

9        In short, the Court finds that Plaintiffs were generally unsuccessful in this matter save
10 a few minor victories.  The Court recognizes that Plaintiffs' original complaint triggered
11 action by the Arizona Legislature to clarify whether counties have the authority to license
12 and regulate new or existing sexually-oriented businesses, including authority to impose
13 permit requirements on dancers and managers.  The Court also recognizes that Plaintiffs'
14 original complaint prompted the county to amend the proposed ordinance to address the
15 constitutional challenges presented.  Yet, while their original complaint prompted a
16 significant amount of legislative activity in response to the issues they raised, Plaintiffs are
17 not entitled to attorneys' fees for these efforts because the legislative changes were voluntary
18 and not judicially sanctioned. <u>See Buckhannon Board and Care Home, Inc., et al. v. West</u>
19 <u>Virginia Department of Health and Human Resources, et al.</u>, 532 U.S. 598 (2001) (rejecting
20 the "catalyst theory" as a permissible basis for the award of attorney's fees). Therefore, the
21 Court finds that the most reasonable way to calculate the time element of the lodestar
22 calculation is to isolate the hours devoted to working on the successful claims and exclude
23 the hours labeled as "common time" for all of the claims.  This method recognizes Plaintiffs
24 limited degree of success, but rewards Plaintiffs for the issues on which they did prevail.

25       Based on Plaintiffs' Summary Chart of Claimed Fees and Costs (Doc No. 206 at
26 Exhibit A), the Court determines that Plaintiffs are entitled to the hours worked challenging
27 the provision of Ordinance P-10 requiring the dancers to wear permits.  The hours worked
28 pursuing this claim were summarized by Plaintiffs as follows: 0.3 hours by Mr Weston; 3.85

hours by Mr. Garrou; and, 6.03 hours by Mr. Holley and Ms. Behrens. (Doc No. 206 at Exhibit A).

Next, the Court finds that Plaintiffs are entitled to the hours worked challenging the Amended Adult Business License Requirement, which were summarized by Plaintiffs as follows: 10 hours for Mr. Weston; 30.18 hours for Mr. Garrou; and, 16.29 hours for Mr. Holley and Ms. Behrens.(Doc No. 206 at Exhibit A).

The Court further finds that Plaintiffs are entitled to the hours worked on their appeal to the Ninth Circuit on the issues of the Ordinance's confidentiality requirements regarding disclosure of information supplied in permit applications and the Ordinance's ban on specified sexual activities.  The hours worked by each attorney on these two issues was summarized by Plaintiffs as follows: 15.82 hours by Mr. Garrou and 10 hours by Mr. Brown were spent on the confidentiality requirements.  Additionally, the hours spent working on the specified sexual activities ban was summarized as follows: 0.6 hours by Mr. Weston; 13.3 by Mr. Garrou; and, 6.7 hours by Mr. Brown and Ms. Allen. (Doc No. 206 at Exhibit A).

//
//
//
//

iv. Lodestar Calculation

Based on the method described above, the Court calculated the lodestar as follows:

| Attorney | Hours | Rate | Total |
| --- | --- | --- | --- |
| Weston | 10.9 | $350/hour | $3,815 |
| Garrou | 63.15 | $275/hour | $17,366.25 |
| Others | 39.02 | $110/hour | $4,292.20 |
|  |  |  | $25,473.45 |

v. Final Fee Award

The Court finds that Plaintiffs are entitled to $25,473.45 in attorneys' fees for the work expended in this action. While the lodestar may be adjusted to reflect the degree of success achieved in this litigation, the Court finds it unnecessary to make such an adjustment because the overall results achieved were taken into account when calculating the number of hours reasonably expended in this litigation. Thus, the *Kerr* factors were subsumed in the initial lodestar calculation.[3] See McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).

Having been heavily involved in this action from the beginning, the Court is well-aware of the degree of success actually achieved by Plaintiffs. Despite the length of time dedicated to this litigation, Plaintiffs have achieved a very limited degree of success. The ordinance that prompted this action remained largely unchanged as the majority of the provisions, including the licensing scheme and operating restrictions, were deemed constitutional. Therefore, for the reasons set forth above, the Court finds Plaintiffs are entitled to only a portion of the amount of attorneys' fees requested.

## CONCLUSION

Therefore, for the reasons set forth above,

**IT IS HEREBY ORDERED** the Motion to Exceed Page Limit filed by Defendant Maricopa County [Doc. No. 215] is **GRANTED**

**IT IS FURTHER ORDERED** Plaintiffs' Request for Leave to File a Reply Memorandum in Excess of Page Limitation of Rule 7.2(e) [Doc. No. 223] is **GRANTED**.

---

[3]The twelve *Kerr* factors bearing on reasonableness of an award of attorney's fees are:(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. See Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975). Here, the Court paid particular attention to factors (5), (8) and (9).

1  **IT IS FURTHER ORDERED** that Plaintiffs' First Supplemental Fees Application
2  [Doc. No. 225] is **DENIED**.
3  **IT IS FURTHER ORDERED** that Plaintiffs' Motion for an Award of Attorney Fees
4  Under 42 U.S.C. § 1988 [Doc. No. 205] is **GRANTED IN PART**.
5  **IT IS FURTHER ORDERED** that the Defendant Maricopa County shall pay
6  Twenty-Five Thousand Four Hundred Seventy-Three and 45/100 dollars ($25,473.45) to
7  counsel for Plaintiffs.
8  DATED this 28th day of September, 2006.

_____
Stephen M. McNamee
United States District Judge